NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

GLEN RAY ROBERTSON, *Appellant.*

No. 1 CA-CR 23-0082
FILED 3-7-2024

Appeal from the Superior Court in Maricopa County
No.  CR2019-112191-001
The Honorable Michael C. Blair, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joshua C. Smith
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Jesse Finn Turner
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Cynthia J. Bailey joined.

_____

**C R U Z**, Judge:

¶1        Glen Ray Robertson appeals his convictions and sentences for first-degree criminal trespassing and disorderly conduct. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2        In the early morning of March 18, 2019, S.B. and P.J. were asleep in their apartment bedroom. Two of S.B.'s children were asleep elsewhere in the apartment. S.B. and P.J. woke and saw Robertson standing at the foot of their bed. S.B. said "Excuse me" to Robertson, and Robertson apologized and said he lived in the apartment complex and had gone into the wrong apartment. The door to S.B.'s and P.J.'s apartment had been left unlocked.

¶3        P.J. got out of bed and grabbed his handgun. He swore at Robertson and told him to get out, but Robertson did not move. P.J. chambered a round and pointed the gun at Robertson. Robertson said he was going to go get his gun and continued to ignore P.J.'s repeated demands that he leave. Robertson put his shoulder down three or four times in a posture that made P.J. fear Robertson would tackle him. P.J. demanded that Robertson leave about a dozen times. Robertson eventually started backing up with P.J. pointing the gun at him and left the apartment through the front door.

¶4        P.J. estimated that between two and three minutes elapsed from when he woke until Robertson left the apartment. During that time, Robertson told S.B. and P.J. that he was going to get his gun and come back approximately six times. S.B.'s children woke up during the incident. Her son had been sleeping on the living room couch and hid behind it; her daughter stuck her head out of her bedroom and S.B. told her to stay in her room. S.B. called 9-1-1, and Mesa police officers arrested Robertson in the apartment complex's parking lot. He was unarmed. Robertson was on probation at the time of the offenses.

¶5            A grand jury indicted Robertson on one count of first-degree criminal trespassing, a class 6 felony (count 1), and one count of disorderly conduct (count 2), a class 1 misdemeanor.  After trial, a jury convicted Robertson of first-degree criminal trespassing, and the superior court convicted him of disorderly conduct.  The superior court sentenced Robertson to the presumptive term of 3.75 years in prison with credit for 998 days of presentence incarceration for count 1 and six months in jail for count 2, to be served concurrently with count 1.

¶6            Robertson timely appealed.  We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A), 13-4031, and -4033(A)(1).

## DISCUSSION

¶7            Robertson first argues the superior court erred by failing to provide additional instructions to the jury in response to a jury question asking whether there was a certain amount of time a person had to remain for the jury to conclude he remained unlawfully.  We review the superior court's decision to give a jury instruction for abuse of discretion but review whether the given instruction correctly states the law de novo.  *State v. Solis*, 236 Ariz. 285, 286, ¶ 6 (App. 2014).

¶8            The State conceded in this case that Robertson accidentally entered the apartment but argued the jury should find him guilty of first-degree criminal trespass for unlawfully remaining in the apartment after being told to leave.  "A person commits criminal trespass in the first degree by knowingly . . . [e]ntering or remaining unlawfully in or on a residential structure."  A.R.S. § 13-1504(A)(1).  "'Enter or remain unlawfully' means an act of a person who enters or remains on premises when the person's intent for so entering or remaining is not licensed, authorized or otherwise privileged . . . ."  A.R.S. § 13-1501(2).  The superior court's jury instructions mirrored this statutory language.

¶9            During deliberations, the jury sent out a question which read, "Does the law further or can the judge further clarify 'remain unlawfully' for example certain time lapse? −1 min.? or the minute told to leave he (defendant) had to run away instantly?"  Before the superior court discussed the jurors' question with the attorneys, Robertson moved for a mistrial, or in the alternative, a special jury instruction.  Robinson asked the court to provide the following special jury instruction:

> "Unlawfully" is a term of common usage that is not defined
> under the law in this context.  But the law does *not* require

3

that anyone "run away instantly" the moment they become aware they are present somewhere without authorization.

Rather, as the final jury instructions explain, the State must prove beyond a reasonable doubt that the defendant committed an act with the intent of remaining without authorization, and that he did so knowingly.

To determine whether the defendant's presence was unlawful, the jury must be firmly convinced, beyond a reasonable doubt, that the defendant affirmatively refused to leave. If the jury believes there is a real possibility that the defendant was attempting to leave, then the jury must find the defendant not guilty.

The State objected to Robertson's proposed jury instruction, arguing it misstated the law, and after discussing the matter with defense counsel and the State, the superior court denied the motion for mistrial and declined to give the jurors any additional special instruction. The superior court gave the jury the following answer to its question: "Please refer to the final jury instructions that you were given."

¶10     "The decision to further instruct a jury on a matter . . . is within the trial court's discretion." *State v. Ramirez*, 178 Ariz. 116, 126 (1994). *See also* Arizona Rule of Criminal Procedure 22.3(b) ("If, after the jury retires, the jury . . . requests additional instructions, the court *may* recall the jury to the courtroom and further instruct the jury as appropriate.") (emphasis added). "[W]hen a jury asks a judge about a matter on which it has received adequate instruction, the judge may in his or her discretion refuse to answer, or may refer the jury to the earlier instruction." *Ramirez*, 178 Ariz. at 126 (citation and internal quotation marks omitted). Because the superior court's final jury instructions correctly stated the law concerning criminal trespass in the first degree, including the statutory definition of "[e]nter or remain unlawfully," the court was not required to provide an additional instruction in response to the jury's question. Moreover, Robertson's proposed special jury instruction did not accurately reflect the law and added an additional element to the offense—that Robertson "affirmatively refused to leave." *See State v. Miranda*, 200 Ariz. 67, 69, ¶ 5 (2001) ("Courts may not add elements to crimes defined by statute . . ..").  The superior court correctly concluded that whether Robertson remained unlawfully in the apartment was a fact question for the jury. We find no abuse of discretion.

¶11        Robertson next argues the superior court erred by precluding the testimony of two of his witnesses.  He argues the witness' proposed testimony was relevant to whether he left the apartment within a reasonable time.  We review the superior court's evidentiary rulings for an abuse of discretion.  *State v. Blakley*, 204 Ariz. 429, 437, ¶ 34 (2003).

¶12        After the State's case-in-chief, defense counsel told the court he planned to call his father, Erik Harris, and defense investigator Jim Rozalewycz as witnesses.  The State asked for offers of proof because Robertson had not provided the State with statements about their testimony.

¶13        Defense counsel avowed that Harris would testify he knew Robertson took prescription painkillers and would testify about how the medication affected Robertson, "particularly late at night when he's tired, and it can cause him to have delayed reactions to things and also cause him to have the appearance of being intoxicated."[1]  When the court asked how Harris would know if Robertson had taken his medicine, defense counsel avowed Robertson was at Harris' house on the evening of March 17 but acknowledged Harris "may not necessarily see [Robertson] take every pill that he's required to take throughout the day."  The State argued Harris' testimony was irrelevant to whether Robertson remained in the apartment unlawfully, and Harris could not testify about "any of the facts that occurred on the date in question."  The superior court found Harris' proposed testimony irrelevant and precluded it.

¶14        Defense counsel avowed that defense investigator Rozalewycz would testify that S.B.'s and P.J.'s apartment unit was identical to Robertson's girlfriend's apartment, would lay the foundation for an Uber receipt showing the route and time Robertson traveled on May 18, and that Rozalewycz would testify his investigation showed that Robertson's Uber driver dropped Robertson off in front of the wrong apartment.  The superior court found Rozalewycz' proposed testimony irrelevant and precluded it.  The court found the Uber evidence was not exculpatory because the fact that Robertson entered the apartment by mistake was not at issue—the issue was whether he unlawfully remained.  The court also found that Rozalewycz was not qualified to provide the foundation for the Uber receipt because he did not know how the receipt was "kept in the normal course of business."

---

[1]        Before trial the superior court granted Robertson's motion to preclude evidence that he appeared intoxicated.

¶15 Relevant evidence is generally admissible. Ariz. R. Evid. ("Rule") 402. Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." Rule 401. "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Rule 602.

¶16 The superior court did not err by precluding Harris' and Rozalewycz' testimony. Harris, who last saw Robertson on the evening of March 17, would not have been able to testify that Robertson was under the effects of medication on the morning of March 18. And Rozalewycz' proposed testimony concerning the Uber receipt, when and where Robertson arrived at the apartment complex, and the similarity of the apartment units would have had no bearing on whether Robertson remained unlawfully in the apartment. At most, Rozalewycz' proposed testimony would have supported a conclusion that he mistakenly entered the apartment, a fact the State did not contest.

**CONCLUSION**

¶17 For the foregoing reasons, we affirm Robertson's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:   AA

6